> The decree is affirmed, and the appeal dismissed at the costs of the appellant.

## Appeal of the City of Harrisburg.

A. built a row of eight houses in the city of Harrisburg, and provided them with five hydrants and one pavement washer. He rented the eight buildings to as many different tenants, who used the five hydrants and one pavement washer for the purposes of the eight houses. A. was charged by the city and paid for some years, until his death, the same amount in water rents, as he would have been charged had each of the eight tenants used a separate hydrant and pavement washer. Upon his death in 1875, B., as the agent of his heirs at law, continued to pay the water rents on the said basis until in 1880, when he refused to pay for that year for more than five hydrants and one pavement washer. Upon the threat of the city to cut off the water supply from said buildings, A.'s heirs at law filed a bill in equity praying for an injunction to restrain the city from so doing, and alleging that the use of the water by the eight tenants was without the knowledge and authority of the complainants:

*Held*, that the above facts were sufficient to justify the inference that the heirs at law did authorize and permit the use of the water by the tenants.

*Held*, further (without deciding the legal merits of the controversy), that the complainants presented no sufficient case to warrant the interference of a court of equity.

June 3, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

APPEAL from the Court of Common Pleas of *Dauphin county*, in Equity: Of May Term, 1884, No. 7.

This was an appeal by the City of Harrisburg from a decree of the said court, enjoining the said appellant from cutting off the water supply of certain premises in the said city. The decree was entered in accordance with the prayers of a bill in equity, wherein Elizabeth Kunkel et al., the owners in fee of said premises, were plaintiffs and the said city was defendant.

The bill and answer were referred to Elias Hollinger, Esq., as Master, whose findings of facts and conclusions of law were substantially as follows:

G. J. Kunkel, from whom the plaintiffs derived title to the premises in question as heirs at law and devisees, built the premises, consisting of eight adjoining houses, in or about the year 1865. He provided the eight houses with but five hydrants and one pavement washer. He rented the eight buildings to as many different tenants, who made the pavement washer and the five hydrants serve the needs of the eight houses. G. J. Kunkel, from the time of the completion of the buildings until his death in 1875, paid the city the same amount in water rents as if each house had been furnished with a separate hydrant and pavement washer. After his death, the agent of the plaintiffs continued to pay the water rents on the above basis until in 1880, when he refused to pay for that year for more than five hydrants and one pavement washer for the above premises. An ordinance of the city of Harrisburg provides:

"Owners, tenants or their agents, who permit others who have paid no water rent, or have no service pipes in operation on their premises, to use the water, shall be liable, on conviction thereof, to a fine of five dollars, and in addition thereto the water rent for the time during which such openings have been so used, and the officer in charge of the draws shall close the same until the fine and rents are paid."

Upon the attempt of the defendant to compel the payment of the full amount of its water bills by cutting off the supply of water, the plaintiffs filed this bill, and a preliminary injunction was granted.

It was alleged by the defendant and denied by the plaintiffs that the plaintiffs had knowingly authorized and permitted their tenants to use the five hydrants and one pavement washer for the purposes of the eight houses. Upon this point and as his general conclusion, the Master reported:

"Keeping in view that principle in equity which teaches us that whatever is sufficient to put a party on inquiry is deemed notice, it seems to the Master that the inevitable conclusion follows that as complainants had claims presented and demands made upon them by defendants as for such use of

water, annually for a number of years to and including the year 1879, said claims and demands were sufficient to put them on inquiry, and were consequently notice of such use of water by the tenants, and the payment by the complainants of said demands was an approval and acknowledgment of such use of water by their tenants, and therefore they are liable to pay as demanded by defendant for the year 1880, no written notice having been given of any discontinuance of said use. According, therefore, to the Master's view of this question, complainants are indebted to defendant for water rents as claimed by said defendants, and the injunction ought to be dissolved and the bill dismissed at the cost of the complainants."

Exceptions filed to this report by the plaintiffs were sustained by the court, SIMONTON, P. J., filing the following opinion :

. . . . . The complainants in this case cannot be held liable for the water rents claimed by respondent, until it is shown that they permitted the use of the water in violation of this ordinance.   It is not pretended that they did so personally ; the only question is whether they did by their agent, G. J. Kunkel.   Respondent admits " that no express authority was given by the landlord to any of the tenants of the row (' to use the water ') ; that the leases whether by parole or in writing under seal are silent on the subject, and no understanding was had between the landlord and tenants as to the right to use the pavement washer located in front of the row." The agent, G. J. Kunkel, testifies in the most positive terms— and there is no contradictory testimony—that he did not permit the use of the water by the tenants of those premises not provided with hydrants and pavement washers, and did not know of such use, except probably by one tenant for part of the year 1880, which is the year in question.   Yet the Master, in the face of this uncontradicted testimony, finds, by way of inference, that he did know of such use and did permit it, in effect, during all of said year.   The basis of this inference is that he paid—under protest—for such use in 1879, and was therefore bound to know.   But the agent testifies that he made this payment, not because he knew the water had been used, or because he had permitted it to be used, but—protesting that he did not know and did not permit—because otherwise the water would have been cut off from those tenants who had hydrants, as the time for payment was just expiring and there was not time left to apply for an injunction.   The inference is also thought by the Master to be strengthened by the fact that this agent and the former land-

lord paid for earlier years, though the agent testifies that the bills were endorsed for these years in a lump sum, and that he did not know he was so paying. We are unable to understand how any or all of these facts relating to acts or omissions of prior years can sustain or justify the inference that the agent of the complainants knew of or permitted the use of the water in 1880, even without his positive evidence—uncontradicted—that he did not know or permit.

The injunction was accordingly made perpetual.

The defendant took this appeal, assigning for error the said action of the court in making the injunction perpetual.

*Charles H. Bergner* (with him *Thomas S. Hargest*), for the appellant, cited: Girard Life Ins. Co. *v.* City, 7 Norris 394, and cases there cited.

*G. J. Kunkel* and *H. M. Graydon*, for the appellees.

Mr. Justice PAXSON delivered the opinion of the court, October 6, 1884.

This bill was filed by the plaintiff below for an injunction to restrain the city of Harrisburg from stopping the water supply from certain houses owned by him. The city claimed to charge each house with the use of the water, although in point of fact the houses were so constructed that one hydrant supplied two houses. The evidence shows that the water was used for each house, and for some years the water rent was paid by the owner as claimed by the city.

The case was referred to a Master, who found the facts in favor of the defendants, and recommended that the bill be dismissed. Upon exceptions the court below reversed the Master and made the injunction perpetual. The main ground of this action appears to be that in the opinion of the court, knowledge of such unauthorized use of the water was not brought home to the plaintiff. The learned judge says in his opinion: " The agent, G. J. Kunkel, testifies in the most positive terms—and there is no contradictory testimony—that he did not permit the use of the water by the tenants of those premises not provided with hydrants and pavement washers, and did not know of such use, except probably by one tenant for part of the year 1880, which is the year in question. Yet the Master, in the face of this uncontradicted testimony, finds by way of inference, that he did know of such use, and did permit it in effect during all of said year."

We are compelled to differ from the learned court upon this point, and sustain the finding of the Master, so far as to say that there was abundance in the case to justify his inference of plaintiff's knowledge of the use of the water by his ten-

[Watts v. Lehman.]

ants. To say nothing of the water bills for such use, presented and paid for several years, the plaintiff knew that his tenants had no other source of supply. When a man builds or owns two houses with one hydrant only between them, it is not a violent presumption that he expects the occupant of each house to get his supply of water therefrom. And although he may plead ignorance of the actual use of the water by his tenant, and may not have expressly authorized it, a chancellor will pay little heed to such ignorance. It is sufficient to glance at the plan of plaintiff's houses to see that they were constructed with the view of supplying two or more houses from one hydrant. Whatever may be the legal merits of this controversy it is certainly not one for the interference of a chancellor. The plaintiff has no equity.

> The decree is reversed, the injunction is dissolved, and the bill dismissed at the costs of the appellees.